UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WALTER C RUMAN, | CASE NO. C19-854 MJP |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | |
| Defendant. | |

The above-entitled Court, having received and reviewed:

1.  Defendant's Motion to Dismiss Plaintiff's Complaint (Dkt. No. 20),

2.  Response of Walter C. Ruman to Defendant's Motion to Dismiss (Dkt. No. 28),

3.  Reply in Support of Federal Deposit Insurance Corporation's Motion to Dismiss
    Complaint (Dkt. No. 30),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is GRANTED, and the matter is DISMISSED WITH
PREJUDICE.

## Background

A timeline is required in order to establish the context for Plaintiff's allegations and the Court's findings:

- **January 19, 2001:** Plaintiff bought a home in San Antonio, Texas, executing a promissory note for $182,500. (Dkt. No. 1, Complaint, ¶ 5.1.)

- **April 9, 2001:** Servicing of the loan was transferred to Washington Mutual Bank ("WMB").

- **January 2, 2002:** Plaintiff was called to active duty in the U.S. Air Force. (Complaint, ¶ 5.3.)

- **July 2, 2002:** WMB sent Plaintiff a letter demanding past due mortgage payments and notifying him of its intent to accelerate the loan. (Dkt. No. 19, Decl. of Grieser, Ex. G.)

- **August 28, 2003:** Having previously notified Plaintiff that he was delinquent on his property taxes for the preceding two years, WMB informed Plaintiff that it would initiate delinquent property tax payments to protect its interest in the property. From 2003 to December 2016, WMB (and later its successor-in-interest, Defendant Chase) paid the taxes on the property. (Id.)

- **September 11, 2003:** WMB advised Plaintiff that non-judicial foreclosure proceedings had been initiated. (Id.; Complaint at ¶ 5.25.)

- **September 25, 2008:** WMB was declared insolvent; the Office of Thrift Supervision appointed the FDIC as Receiver. The FDIC entered into an agreement with Chase whereby Chase became the successor-in-interest to the assets and liabilities of WMB (including its loan servicing rights). (Decl. of Grieser, Exs. A, B.)

- **October 1, 2008:** The FDIC published notice in three newspapers (<u>Seattle Times</u>, <u>Las Vegas Sun/Review-Herald</u>, <u>Wall Street Journal</u>) of the receivership and of the December 30, 2008 deadline to file claims (the "Claims Bar Date;" "CBD"). (<u>Id.</u> at Ex. C.)[1]

- **October 10, 2008:** Chase sent Plaintiff a letter informing him that WMB had been shut down and the FDIC appointed as receiver, and that Chase had acquired the servicing rights to his loan. (<u>Id.</u> at Ex. G.) Plaintiff acknowledges receipt of this letter.

- **July 6, 2010:** A class action lawsuit was initiated against Chase for violations of the SCRA (50 U.S.C. §§ 3901 *et seq.*), including failure to maintain statutory interest rate of 6% for one year (§ 3937); foreclosure, seizure or sale without a valid court order (§ 3953); illegal adverse adjustments to credit (§ 3919); and illegal repossession or termination of installment contracts (§ 3952). (<u>Rowles v. Chase Home Finance, LLC</u>, 2010 WL 9946631.)

- **May 13, 2011:** An Amended Settlement Agreement was filed in <u>Rowles</u>; the class included WMB lendees and the settlement contained an "opt out" requirement. (Ex. 4.)

- **January 10, 2012:** Final approval of the <u>Rowles</u> settlement was entered, and the case was dismissed with prejudice. (2012 WL 80570.) No objections to the agreement were lodged thereafter.

- **June 29, 2012:** Plaintiff was mailed a <u>Rowles</u> settlement check; there is no evidence the check was ever deposited.

---

[1] Plaintiff submitted a declaration that he never saw any of the publication notices nor received any written notice from WMB or the FDIC regarding the need to file an administrative claim. Dkt. No. 48, Decl. of Ruman, ¶¶ 14-15.

- **August 1, 2016:**     Plaintiff retired from active duty with the Air Force.  (Complaint, ¶ 5.19.)

- **August 4, 2017:**     Plaintiff filed suit against Chase and other institutional financial defendants in the U.S. District Court for the Western District of Texas.  (Ruman v. Chase, et al., No. 5:17-00733-FB.)  The lawsuit alleged two SCRA violations (§§ 3937, 3953).

- **September 28, 2018:** Plaintiff's second cause of action (§ 3953, unlawful seizure/changing the locks, paying property taxes) was dismissed for failure to exhaust the administrative claims requirement of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA;" 12 U.S.C. §§ 1821 et seq.) (Ruman v. Chase, et al., 369 F.Supp.3d 748, 760 (W.D. Tex. 2018).)

- **October 9, 2018:**     The FDIC-Receiver sent Plaintiff a Notice to Discovered Plaintiff to Present Proof of Claim.  (Decl. of Grieser, ¶ 5, Ex. D.)

- **October 26, 2018:**    Plaintiff submitted his Proof of Claim ("POC;" Id., ¶ 6, Exs. E-G.)

- **April 2, 2019:**     Prior to a ruling on summary judgment motions attacking the first cause of action (including a claims preclusion argument based on the Rowles settlement), the parties filed a Joint Notice of Settlement and Stipulation of Dismissal, which was entered on this date.

- **April 8, 2019:**     The FDIC-Receiver sent Plaintiff a letter disallowing his POC as untimely; in addition to missing the original CBD of December 30, 2008, the claim was deemed untimely because it was submitted more than 90 days after his separation from military service.  (Decl. of Grieser, ¶ 7, Ex. H.)

- **June 3, 2019:**     Plaintiff files this complaint in WAWD, alleging violations of §§ 3937 and 3953 of the SCRA and seeking $500,000 in emotional distress damages and

$301,140 as damages for the lost value of the property.  Complaint, § VII Prayer for Relief.

**Discussion**

Standards of review

Defendant brings it motion under FRCP 12(b)(1) and 12(b)(6).  A complaint must be dismissed under Fed.R.Civ.P.12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute.  Baker v. Carr, 369 U.S. 186, 198 (1962); D.G. Rung Indus., Inc. v. Tinnerman, 626 F.Supp. 1062, 1063 (W.D. Wash. 1986); see 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant).  When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction.  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489 U.S. 1052 (1989); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983).  A federal court is presumed to lack subject matter jurisdiction until plaintiff establishes otherwise.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994); Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Under FRCP 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party.  Livid Holdings, Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded

allegations of material fact as true and draw all reasonable inferences in favor the plaintiff. Wyler summit Partnership v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)/ A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Aschcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). As a result, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Defendant attacks Plaintiff's complaint on a number of grounds, but a thorough examination of only two of them suffices to justify dismissal of the action.


Lack of subject matter jurisdiction: Failure to exhaust mandatory FIRREA claims process

The Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA;" 12 U.S.C. §§ 1821 *et seq*.) was a comprehensive legislative plan empowering the FDIC to step in as a receiver for failing banks and other financial institutions. One aspect of the statutory scheme was a mandatory administrative claims process requiring that all claims asserted against a failed bank be submitted to the FDIC-Receiver by the Claims Bar Date ("CBD"), a date established as "not less than 90 days after the publication of [the] notice [of receivership]." 12 U.S.C. § 1821(d)(3)(B)(i). The process is a non-optional prerequisite for establishing a valid claim; the court has no jurisdiction over any claim unless: (1) the administrative claims process has been timely exhausted and (2) suit has been filed within 60 days of the receiver's disallowance of a claim. 12 U.S.C. § 1821(d)(6)(A)(ii), (d)(7)(A), (d)(8)(C); *see also* Kuhlamnn v. Sabal Financial

Group LP, 26 F.Supp.3d 1040, 1048 (W.D. Wash. 2014), *citing* Intercontinental Travel Marketing, Inc. v. FDIC, 45 F.3d 1278, 1282-84 (9th Cir. 1994).

There is no dispute that Plaintiff failed to file a FIRREA administrative claim by the original CBD in the WMB receivership, which was December 30, 2008. While Plaintiff asserts that he never saw any of the published Notices of Receivership and Claims Bar Date of which Defendant has proof, he does not controvert that he received a letter on October 10, 2008 informing him of the FDIC's appointment as receiver of the failed WMB and its acquisition of his loan servicing rights. Decl. of Grieser, Ex. G at 0064-66. While the letter says nothing about the CBD or the requirement that Plaintiff file an administrative claim, the Court does not find this determinative: notice of the mandatory administrative claims process is not a requirement of the statute.

There are two statutory exemptions under which Plaintiff claims protection from the operation of FIRREA. While the Court finds that Plaintiff qualifies under one of them (the SCRA), ultimately it does not avail him, because he failed to timely file his POC once the statute of limitations on his claim began ticking again. As explained *infra*, while tolling under the SCRA is applicable to Plaintiff, the standard FIRREA "late-filed exception" is not available to him; hence (as Defendant argues) Plaintiff had approximately three months after mustering out to file his POC and he missed that deadline by a considerable amount.

As regards the SCRA, Plaintiff alleges in his complaint that any applicable statutes of limitation relative to his obligations vis-à-vis his loan and his causes of action against WMB, Chase and the FDIC were tolled during his period of military service by operation of 50 U.S.C. § 3936:

**(a) Tolling of statutes of limitation during military service**
The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

There is no dispute that Plaintiff was on active military duty at the time that the original Notice of Receivership and Claims Bar Date was issued and at the time the CBD would have acted to extinguish any otherwise non-exempt, late-filed claims. On that basis, it is the Court's finding that any limitations period applicable to Plaintiff was tolled up until the conclusion of his military service (i.e., August 1, 2016) by operation of § 3936.

Plaintiff also claims entitlement to the "late-filed claim exception" found in FIRREA itself. § 1821(d)(5)(C)(i-ii) states:

**(C) Disallowance of claims filed after end of filing period**
**(i) In general**
Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.
**(ii) Certain exceptions**
Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if--
**(I)** the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and
**(II)** such claim is filed in time to permit payment of such claim.

This exception is inapplicable to Plaintiff's situation. It only operates to protect late-filed claims where "the claimant did not receive notice of the appointment of the receiver in time to file such claim before" the CBD. In fact, as he acknowledged, Plaintiff <u>did</u> receive notice of the

appointment of the receiver in time to file such claim before the CBD. He does not dispute receipt of a letter on October 10, 2008, advising him of the failure of WMB and the appointment of FDIC as the receiver. Decl. of Grieser, Ex. C. He argues that the letter said nothing about the CBD or the necessity of filing a timely POC under the FIRREA, but the statute contains no requirement that a claimant be notified of those facts, only that the claimant "receive notice of the appointment of the receiver." *See* Intercontinental Travel Mktg Inc. v. FDIC, 45 F.3d 1278, 1285 (9th Cir. 1994)("FIRREA expressly gives relief from the bar date to claimants who do not receive notice of receivership but does not provide the same relief to claimants who do not receive notice of the administrative claims bar date.")

Thus, Plaintiff is only protected by the SCRA exemption and, while that operated to stay the limitations clock on his claim as long as he was active military, what Plaintiff never establishes definitively is: what was the limitations period once he retired from the military?

In the April 8, 2019 letter denying Plaintiff's FIRREA POC as untimely (Decl. of Grieser, Ex. H), the grounds cited for that finding were (1) failure to file by the December 30, 2008 CBD and (2) failure to file the claim within 90 days of the expiration of Plaintiff's active military status. The Court has already determined that Plaintiff was protected from the operation of the original CBD by the tolling provision of the SCRA. While Plaintiff objects strenuously to the application of the 90-day limitations period, he makes no persuasive argument regarding why the limitations period should not be applied to him once he was outside the protection of the SCRA tolling provision. Nor does he propose anything definitive, authoritative or convincing regarding what the limitations period *is* if it is not the three-month window asserted by Defendant.

The rationale for applying the FIRREA limitations period to Plaintiff's circumstances is a convincing one. Under FIRREA, the CBD is established as "not less than 90 days after the publication of the notice." 12 U.S.C. § 1821(d)(3)(B)(i). In the case of the failure of WMB, the claims period was 96 days – from September 25, 2008 to December 30, 2008. Decl. of Grieser, ¶¶ 3-4. In light of the fact that (1) Defendant has established that it satisfied the notice requirements of FIRREA and (2) Plaintiff has established that he is entitled to the tolling protections of the SCRA, then the limitations period should be the same period statutorily granted to all others similarly situated to Plaintiff and should begin upon the date the tolling period ended. With a retirement date of August 1, 2016, Plaintiff was required to file his POC 96 days later, by November 5, 2016. His October 26, 2018 filing is untimely, stripping the Court of jurisdiction to adjudicate any issues concerning his claim.

Plaintiff's arguments to the contrary are, by contrast, highly unconvincing, failing at every point to definitively establish what the limitations period should be if not the one proposed by Defendant. First, Plaintiff invokes the substantive protections of the SCRA that apply a one-year "zone of protection" to interest rates and nonjudicial foreclosure following retirement, with no explanation of how that period applies to an administrative claim deadline. And (as Defendants point out) even if the one-year protection did somehow extend to his FIRREA claims, he did not file his POC until October 28, 2018 – two years after he retired from the military. Oddly, he refers to his Texas lawsuit (which was filed a year and 3 days after his retirement) and then to the 29-day interval between the Texas court's ruling that he had failed to exhaust the administrative process and his actual filing of the POC with the FDIC. At no point in his briefing does Plaintiff state definitively "this is what the statute of limitations should have been and this is why."

FIRREA's claims process is jurisdictional and mandatory; failure to adhere to its deadlines invalidates any claim against the receiver and strips the Court of jurisdiction to adjudicate it. Defendant has the better argument: even assuming the SCRA protected Plaintiff up until the date of his retirement (which the Court finds that it did), the tolled statute of limitations began ticking upon the expiration of Plaintiff's active duty status and Plaintiff had the same amount of time thereafter that he would have had under the original notice and filing procedure; i.e., the same 96 days as the rest of the WMB claimants. He filed his POC outside that period and his claim is forfeit.

The motion to dismiss could be granted on this ground alone; the dismissal will be with prejudice as this is clearly not a defect that can be cured through amendment. And there is a further basis for granting dismissal in this matter.


No private right action for SCRA claims pre-2010

Prior to a 2010 Congressional amendment, it is the jurisprudence in the Ninth Circuit that the SCRA did not allow for a private right of action for servicemembers.

Although federal law has provided servicemembers protection against property foreclosure since the SSCRA [the prior version of the SCRA], it is undisputed that neither the SCRA nor its predecessors contained an express private right of action until Congress, in the Veterans' Benefits Act of 2010, added a section to the SCRA providing that a servicemember whose SCRA rights are violated may "obtain any appropriate equitable or declaratory relief . . . [and] recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042(a) (2018); Veterans Benefits' Act of 2010 … The conclusion that no implied right existed prior to the 2010 amendment also fits with the underlying purpose of the legislative scheme, which was "made to *suspend enforcement* of civil liabilities, . . . in order to enable such persons to devote their entire energy to the defense needs of the Nation, [and] . . . for the *temporary suspension* of legal proceedings, and transactions which may prejudice the civil rights of persons in such

service." 50 U.S.C. app. § 510 (1990) (current version at 50 U.S.C. § 3902
(2012)). This focus is on delaying proceedings rather than compensating
servicemembers for any violations. As such, we find no basis to now
imply a private right of action for damages, attorney's fees, and costs
based on the statutory intent and purpose of the [prior legislation].

McGreevey v. PHH Mortg. Corp., 897 F.3d 1037, 1044 (9th Cir. 2018)(emphasis in original).

Plaintiff attacks McGreevey as "not reflect[ing] the great weight of other federal cases,"

cites other circuits where a private right of action was found prior to 2010, and calls the Ninth

Circuit case an "outlier." (Response at 17-20.)  This avails Plaintiff nothing.  McGreevey has not

been overturned and is controlling precedent for the District Courts of the Ninth Circuit, leaving

this Court with no option but to adhere to its holding.  Plaintiff has no right to a private right of

action under the SCRA in this forum.


Other grounds for dismissal

Defendant asserts several other grounds for dismissal.  One of them represents a third

ground for dismissal of the entire lawsuit on the basis of claim preclusion; essentially, that the

claims represented by this lawsuit are identical to those brought in the Rowles class action

matter, and that the settlement of that litigation precludes Plaintiff (who was unquestionably a

member of the Rowles class) from further legal action against the FDIC on the basis of

allegations concerning WMB or Chase.  The Rowles class action was settled on an "opt out"

basis and there is considerable dispute between the parties regarding whether Plaintiff

successfully "opted out" of the Rowles settlement and thus is not bound by it.   While the merits

of this argument appear to favor Defendant (Plaintiff has produced no proof that he conformed to

the stringent written opt-out requirements of Rowles), this was not an issue which was fully

developed or briefed on either side and the Court finds it neither prudent nor necessary to reach its merits in order to arrive at a definitive conclusion.

Defendant presents other grounds for dismissal of portions of the lawsuit (an argument that there is no injunctive relief under 12 U.S.C. § 1821(j) and no emotional damages available for SCRA interest rate violations because it is a contractual cause of action), but they are mooted by the finding that the Court has no subject matter jurisdiction and Plaintiff has no private right of action under the SCRA.

## Conclusion

Plaintiff's failure to satisfactorily and timely exhaust the FIRREA administrative claims process deprives this Court of jurisdiction to adjudicate his claims. Further, because his claims originate prior to 2010, Ninth Circuit jurisprudence holds that he has no private right of action under the SCRA. As neither of these are defects which can be remedied through amendment, the Court will GRANT Defendant's motion for dismissal of all claims with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 31, 2020.

Marsha J. Pechman
United States Senior District Judge